Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
Andrew J. Somers, #19078
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com
andrew@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CHRIS K. and C.K.,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>ANTHEM BLUE CROSS and BLUE SHIELD,<br><br>　　　　Defendant. | COMPLAINT |

Plaintiffs Chris K. ("Chris"), and C.K., through their undersigned counsel, complain and allege against Defendant Anthem Blue Cross and Blue Shield ("Anthem") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Chris K. ("Chris") and C.K. are natural persons residing in Hillsborough County, New Hampshire. Chris is C.K.'s father.

2. Anthem is the trade name of Anthem Health Plans of New Hampshire Inc. and is an independent licensee of the nationwide Blue Cross and Blue Shield association. Anthem

1

was the insurer and claims administrator, as well as the fiduciary under ERISA for the insurance plan providing coverage for the Plaintiffs ("the Plan") during the treatment at issue in this case.

3. The Plan is a fully-insured employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). Chris was a participant in the Plan and C.K. was a beneficiary of the Plan at all relevant times. Chris and C.K. continue to be participants and beneficiaries of the Plan.

4. Plan participants and beneficiaries were told that Anthem was the entity to which they were to submit claims, request documents and other information, and otherwise communicate about their benefits under the Plan.

5. C.K. received medical care and treatment at Summit Achievement ("Summit") from June 6, 2023, to July 25, 2023, and then again from September 18, 2023, to April 23, 2024.[1] Summit is a licensed treatment facility located in Maine, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

6. Anthem denied claims for payment of C.K.'s medical expenses in connection with her treatment at Summit.

7. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

---

[1] For a brief period October 30, 2023, to November 8, 2023, C.K. left Summit to deal with a medical issue. Once this was resolved, she returned to treatment.

8. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, and because Anthem does business in Utah through its network of affiliates.

9. In addition, the Plaintiffs have been informed and reasonably believes that litigating the case outside of Utah will likely lead to substantially increased litigation costs they will be responsible to pay and that would not be incurred if venue of the case remains in Utah. Finally, given the sensitive nature of the medical treatment at issue, it is the Plaintiff's desire that the case be resolved in the State of Utah where it is more likely both his and C.K.'s privacy will be preserved.

10. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendant's violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### Summit

11. C.K. was admitted to Summit on June 6, 2023. C.K.'s admissions stemmed from issues which included depression, anxiety, self-harm, suicidal ideation, mood dysregulation, and dysphoria which had not been able to be resolved at other levels of care, including inpatient hospitalizations.

12. In an Explanation of Benefits statement dated September 18, 2023, Anthem denied payment for C.K.'s first admission to Summit under denial code 707:

> This service requires preapproval. Your plan doesn't cover this service without it. You are responsible for this amount. You can avoid these charges in the future by asking your doctor if the service requires preapproval. Refer to your plan of coverage booklet for details regarding plan definitions/exclusions/limitations (what is not covered).

13. In addition, Chris received a letter dated September 19, 2023, which denied payment for C.K.'s second stay under the justification that:

    > One of the coverage requirements under your health benefit plan is that the facility must be appropriately licensed and accredited to render covered services. The medical information we received indicates that the services requested were rendered by a facility that does not satisfy this requirement; therefore, those services would not be considered covered services.

14. On February 22, 2024, Chris submitted an appeal of the denial of payment of C.K.'s treatment. Chris wrote that he was entitled to certain protections under ERISA during the appeal process, including a full, fair, and thorough review conducted by appropriately qualified reviewers whose identities were clearly disclosed, which took into account all of the information he provided, and which gave him the specific reasons for the adverse determination, referenced the specific plan provisions on which the denial was based, and which gave him the information necessary to perfect the claim.

15. Chris wrote that even in the event preauthorization had not been obtained, the Plan allowed for a post-service review to be performed. He asked Anthem to do this.

16. Chris wrote that Summit was both licensed and accredited[2] and met the definition of a facility and a provider as listed in his summary plan description.

17. Chris expressed concern that the denial of payment for C.K.'s treatment was a violation of MHPAEA. He wrote that MHPAEA compelled insurers to ensure that benefits for

---

[2] During the timeframe at issue in this case, Summit was accredited by the National Association of Therapeutic Schools and Programs (NATSAP).

4

mental health services were offered at parity with benefits for analogous medical or surgical services in the same classification.

18. Chris identified skilled nursing facilities, subacute rehabilitation facilities, inpatient habilitative services, and inpatient hospice facilities as some of the medical or surgical analogues to the treatment C.K. received.

19. Chris argued that Anthem was imposing unequal accreditation requirements on residential treatment care compared to its medical or surgical analogues. He wrote that for instance, Anthem required skilled nursing facilities to be accredited by the Commission on Accreditation of Rehabilitation Facilities or The Joint Commission, but rehabilitation facilities and hospice facilities had no listed accreditation requirements at all.

20. Residential treatment facilities on the other hand, were required to not only be accredited, but also to be accredited by one of four specific agencies. Chris alleged that this was a violation of MHPAEA and asked Anthem to perform a MHPAEA compliance analysis to ensure the Plan was being administered in accordance with the statute.

21. Chris wrote that in addition to the denial letter he received alleging a lack of proper accreditation, he had also received Explanation of Benefits statements denying payment on three other counts: a lack of precertification, because more information was required, and due to a lack of medical necessity.

22. Chris wrote that he was including medical records and documentation necessary to prove the necessity of C.K.'s treatment with the appeal and was also asking Anthem to conduct a retrospective review of the claims it had denied due to a lack of preauthorization.

23. In addition Chris asked to be provided with a copy of all documents under which the Plan was operated, including all governing plan documents, the summary plan description, any insurance policies in place for the benefits he was seeking, any administrative service agreements that existed, any clinical guidelines or medical necessity criteria utilized in the determination (along with their medical or surgical equivalents, whether or not these were used), together with any reports or opinions regarding the claim from any physician or other professional, along with their names, qualifications, and denial rates.

24. In a letter dated March 14, 2024, Anthem upheld the denial of payment for C.K.'s treatment. The reviewer stated that the Plan required residential treatment centers to be accredited by The Joint Commission, the Commission on Accreditation of Rehabilitation Facilities, the National Integrated Accreditation for Healthcare Organizations, or the Council on Accreditation. The reviewer wrote that Summit was not accredited by one of these entities and so the denial was being maintained.

25. The reviewer denied the allegation that Anthem was in violation of MHPAEA and wrote that all providers were required to be "appropriately accredited." The reviewer did not further address what this statement meant however, and did not clarify if "appropriate" accreditation for hospice and rehabilitation facilities signified not being accredited at all as Chris had alleged.

26. The reviewer argued that Anthem did not impose non-quantitative treatment limitations and attached a document titled NQTL Self Compliance Tool to the decision.

27. The self-compliance tool is a nine page document that discusses Anthem's approach to avoiding non-quantitative treatment limitations in a very broad and general manner, it

6

does not address the particular MHPAEA accreditation violation alleged by Chris in any particular level of detail.

28. The reviewer also included some of the other documentation Chris had requested, such as a copy of the summary plan description.

29. On July 3, 2024, Chris submitted a written complaint to Anthem's appeals department. Chris pointed out that the March 14, 2024, denial letter only addressed C.K.'s second stay at Summit. He asked Anthem to correct the issue and to again review the appeal, taking into account both admissions and the full dates of service.

30. Chris received no response to this complaint.

31. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

32. The denial of benefits for C.K.'s treatment was a breach of contract and caused Chris to incur medical expenses that should have been paid by the Plan in an amount totaling over $169,000.

## FIRST CAUSE OF ACTION

**(Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))**

33. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Anthem, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

34. Anthem and the Plan failed to provide coverage for C.K.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for

medically necessary treatment of mental health and substance use disorders.

35. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

36. Anthem and the agents of the Plan breached their fiduciary duties to C.K. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in C.K.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, and to provide a full and fair review of C.K.'s claims.

37. The actions of Anthem and the Plan in failing to provide coverage for C.K.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

38. Plaintiffs allege that coverage is available for the treatment C.K. received, however in the event the Court finds that C.K.'s treatment is barred due to a lack of accreditation, Plaintiffs argue that this accreditation requirement violates MHPAEA and is unenforceable.

39. While the presentation of alternative or potentially inconsistent claims in the manner that Plaintiffs state in their first and second causes of action is specifically anticipated and allowed under F.R.Civ.P. 8, Plaintiffs contend they are entitled to relief and appropriate remedies under each cause of action.

//

//

//

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

40. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of Anthem's fiduciary duties.

41. MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

42. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

43. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

44. The application of the facility eligibility criteria used by Anthem for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive

than the application of the criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

45. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for C.K.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

46. Anthem imposes nonquantitative treatment limitations on mental health and substance use disorder treatment because it enforces accreditation requirements on residential treatment which it does not equally apply to its medical or surgical analogues.

47. Although Summit is accredited by a nationally recognized organization, Anthem did not accept this accreditation because it wasn't one of the four accreditation entities Anthem recognized for residential treatment of mental health and substance use disorders.

48. Anthem only requires accreditation from one of these four specific entities for residential treatment services. Other analogous medical or surgical facilities either have different accreditation requirements or are exempt from accreditation altogether.

49. Requiring accreditation for residential treatment facilities from one of four specific entities unnecessarily inflates the cost of residential treatment without contributing to the probability of successful treatment.

50. Placing requirements on residential treatment which serve solely to inflate cost without contributing to the probability that treatment outcomes will be successful is a violation of Defendants' fiduciary duty, as well as the Plan's requirements that services be obtained in the lowest cost level of care for which the illness or ailment can be safely provided.

51. As a large portion of residential facilities are not accredited by The Joint Commission, the Commission on Accreditation of Rehabilitation Facilities, the National Integrated Accreditation for Healthcare Organizations, or the Council on Accreditation, restricting treatment to only those facilities which are so accredited significantly restricts the availability of residential treatment care.

52. As a result, Anthem fails to provide a comparable degree of coverage for residential treatment facility compared to the degree of coverage it provides for medical or surgical analogues such as skilled nursing and inpatient rehabilitation facilities.

53. The failure by Anthem and the Plan to provide adequate coverage in facilities for sub-acute inpatient treatment of mental health and substance use disorders compared to the coverage Anthem provides in facilities for sub-acute inpatient treatment of medical and surgical disorders resulted in a coverage disparity that violates MHPAEA.

54. In this manner, the Defendant violates 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and Anthem, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

55. The violations of MHPAEA by Anthem and the Plan are breaches of fiduciary duty and give the Plaintiff the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

    (a) A declaration that the actions of the Defendant violate MHPAEA;

(b) An injunction ordering the Defendant to cease violating MHPAEA and requiring compliance with the statute;

(c) An order requiring the reformation of the terms of the Plan and the criteria utilized by the Defendant to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

(d) An order requiring disgorgement of funds obtained by or retained by the Defendant as a result of their violations of MHPAEA;

(e) An order requiring an accounting by the Defendant of the funds wrongly withheld from participants and beneficiaries of the Plan as a result of the Defendant's violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring the Defendant to provide payment to the Plaintiff as make-whole relief for his loss;

(g) An order equitably estopping the Defendant from denying the Plaintiff's claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendant to the Plaintiff for his loss arising out of the Defendant's violation of MHPAEA.

56. In addition, Plaintiff is entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiff seeks relief as follows:

1. Judgment in the total amount that is owed for C.K.'s medically necessary treatment at Summit under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

//

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiff's Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 14th day of March, 2025.

By    s/ Brian S. King
       Brian S. King
       Attorney for Plaintiffs

County of Plaintiffs' Residence:
Hillsborough County, New Hampshire